1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NHA HOANG,** | ) **NO. CV 15-230 KS** |
|           **Plaintiff,** | ) |
| | ) |
|     **v.** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) **REMANDING CASE FOR** |
| **CAROLYN W. COLVIN**, | ) **FURTHER PROCEEDINGS** |
| **Acting Social Security Commissioner,** | ) |
|           **Defendant.** | ) |
| _____ | ) |

### INTRODUCTION

On February 10, 2015, Plaintiff Nha Hoang filed a Complaint seeking review of the Social Security Commissioner's decision denying her application for Social Security Disability Insurance benefits, pursuant to Title II of the Social Security Act (hereinafter "DI benefits"). (Dkt. No. 1.) On August 17 and 24, 2015, the parties consented to proceed before the undersigned Magistrate Judge. (Dkt. Nos. 15, 16.) Defendant filed an Answer to the Complaint on August 24, 2015. (Dkt. No. 17.) On October 8, 2015, the parties filed a "Joint

Stipulation" ("JS").  (Dkt. No. 20.)  The matter is now under submission and ready for decision without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DI benefits on March 22, 2011, and alleged a disability onset date of February 1, 2009, claiming that she was disabled and unable to work due to dizziness and pain in both legs after an auto accident that occurred in 2000.  (*See* Administrative Record ["AR"] 24, 29.)  Plaintiff satisfied the DI benefits insurance requirements through September 30, 2013 and therefore Plaintiff had to show that she was disabled on or before that date in order to qualify for DI benefits.  (*See* AR 24.)

Plaintiff's DI benefits application was denied initially and upon reconsideration, and a hearing was held before an Administrative Law Judge ("ALJ") on June 4, 2013.  A medical expert ("ME") and a vocational expert ("VE") appeared and testified at the hearing; and Plaintiff also testified at the hearing.  (*See* AR 37-58.)

On June 21, 2013, the ALJ issued an opinion denying Plaintiff's application at step four of the five-step sequential evaluation, finding that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain restrictions, and that Plaintiff could therefore perform her past relevant work ("PRW") of "electronics assembler" as it was "generally performed" in the national economy.  (*See* AR 24-32.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin,* 798 F.3d 749, 754 (9th Cir. 2015) (internal citations omitted).

//
//
//
//

3

1

## DISCUSSION

2

3    **A.    <u>Issues Raised in Joint Stipulation</u>**

4

5          Plaintiff explicitly raises only one issue in the Joint Stipulation:  "Whether substantial

6    evidence supports the ALJ's determination that [Plaintiff] can return to her past relevant

7    work as an electronics assembler?"  (JS at 4.)

8

9          However, upon review of the parties' arguments presented in the Joint Stipulation, the

10   Court construes that issue to contain the following sub-issues:

11

12         (1)   Whether the ALJ erred in finding that Plaintiff could perform her PRW as an

13   "electronics assembler" as "generally performed" when Plaintiff's RFC for restricted light

14   work is inconsistent with the more-demanding DOT description of the electronics assembler

15   job and its requirement of "frequent" reaching and the ALJ did not ask the VE whether his

16   opinion that Plaintiff could perform her PRW was consistent with the Dictionary of

17   Occupational Titles ("DOT"), and the ALJ did not ask the VE to explain how Plaintiff's

18   RFC can be reconciled with the DOT reaching requirement; and

19

20         (2)   Whether the ALJ's failure to ask the VE to explain the apparent conflict between

21   Plaintiff's RFC for restricted light work and the DOT description of the electronics

22   assembler job was harmless error.   (*See* JS at 4-10, 15-16.)

23   //

24   //

25   //

26   //

27   //

28   //

4

**B.**   **The ALJ's Determination That Plaintiff Can Perform Her Past Relevant Work as "Generally Performed" is Not Supported By Substantial Evidence.**

1.   **Administrative Hearing Testimony**

At a hearing before the ALJ on June 4, 2013, Plaintiff appeared with counsel and participated with the help of a Vietnamese-speaking interpreter.  (*See* AR 39.)   Medical expert Dr. John Morse ("ME"), who reviewed Plaintiff's medical records, appeared by telephone.  (*See* AR 39-41.)   Vocational expert ("VE") Ronald Hatakeyama appeared and testified in person.  (*See* AR 37-41.)

Plaintiff is 4' 9" tall and weighs 93 pounds and she is originally from Vietnam.  (AR 54.)  Plaintiff testified that she was born on September 12, 1956; she was, therefore, 56 years old at the time of the hearing on June 4, 2013.[1]  (AR 45.)  Plaintiff came to the United States in 1977.  (AR 46.)  Plaintiff testified that she has two children, ages 26 and 23 and she lives with her husband, who does most of the household chores such as cooking and laundry.  (AR 49-50.)  She testified that she still drives, but has difficulty dressing and showering because her "body is very stiff."   (AR 50-51.)  Plaintiff takes prescribed medications for pain three times a day and the side effects make her tired and sleepy. (AR 52-53.)   She said she sleeps two to three hours during the day after she takes her pain meds.  (*Id.*)  Plaintiff uses a cane for walking, and has been using the cane since her auto accident.  (*Id.*)

Plaintiff last worked as an "electrical assembler" in February 2009.  (AR 46.)  The ALJ asked her "What would be the heaviest [sic] you lifted?" and Plaintiff replied, "[w]hen I had to lift something heavy I have to ask somebody else, but I

---

[1] Social Security regulations identify persons aged 50-54 as "persons closely approaching advanced age."  C.F.R. § 404.1563 (d);  *see also, Lockwood v. Comm'r,* 616 F.3d 1068, 1069 (9th Cir. 2010).

usually lift two, three or two or one pounds [sic]."  (AR 46.)  Plaintiff also stated that she worked in elderly care services as recently as March 2011, but she could not do that job because "my body was painful."  (*See* AR 46-47.)  The ALJ asked "[d]o you limit the amount of weight that you lift and carry?" and Plaintiff said that "it is very difficult because the most I'm thinking I could carry – you know, lift are three pounds.  But carry, even I cannot walk, so carry, I don't think I can carry anything." (AR 48-49.)  Plaintiff testified that she does not believe that she can to back to her PRW as an electronics assembler.  (AR 54.)  At the time of the hearing, she was seeing three doctors:  a chiropractor, a doctor for her neck, and an eye doctor.  (AR at 51-52.)

Medical expert, Dr. Morse, noted Plaintiff's history of trauma to the cervical spine following Plaintiff's car accident in 2000 and that Plaintiff underwent surgery to her cervical spine and her right ankle at that time.  (AR 41.)  Dr. Morse acknowledged that Plaintiff's current complaints concerned her cervical and lumbar spine areas but he opined that MRIs of Plaintiff's lumbar spine were "relatively normal."  (*Id.*)  Dr. Morse described the record on Plaintiff's cervical spine problems as "somewhat conflicting," and pointed out that some of Plaintiff's records from her treating physician, Dr. K.N. Hurria, were "electronic records that [] are kind of boiler plate records and you just fill in the blanks."  (AR 42.)  Dr. Morse specifically noted that Dr. Hurria's records from 2011 through 2013 diagnosed "hemiparesis," but Dr. Morse found no evidence in the record "that [Plaintiff] ever sustained a stroke or that she has any neurological deficit of her right side."  (AR 42.)  Dr. Morse also noted that some of Plaintiff's records contradicted treating physician Dr. Hurria's opinions and indicated, for example, an "entirely normal" lumbar spine.  (*See* AR 43.)

At the hearing, Dr. Morse opined as to Plaintiff's RFC that, "based on [Plaintiff's] cervical spine injury in 2000 and the residuals therefrom, I would suggest that she could lift ten pounds on a frequent basis, 20 pounds occasionally,. . . [s]he would have additional push/pull limitations involving both upper extremities as a result of her C spine issues and I

would limit her to *occasional* above the shoulder push/pull limitations . . . she would have *occasional* above the shoulder movement bilaterally due to her cervical spine issues." (AR 43 (italics added).)

Vocational expert ("VE"), Dr. Ronald Hatakeyama, testified that, relying on a "Work History Report" at Exhibit 3E, section 6f of the record (AR 205-10), and also relying on Exhibit 4E (AR 211-15), Plaintiff could still do her PRW of electronics assembler, light work, DOT no. 726.684-034 "per the DOT and as performed," or home health aide, medium work, DOT no. 354.377-014 "as performed by the claimant." (AR 55-56; *see also,* AR 31-32.) The ALJ then gave the VE three hypotheticals, each involving "an individual closely approaching advanced age at the onset who is not of advanced age" who has a 12th grade education, two years of college, is literate, speaks English, and has the PRW previously identified. (AR at 55-56.)

In the first hypothetical the VE was asked to assume, among other things, that the person "can *occasionally* use the upper extremity for pushing and pulling" and "*occasionally* reach overhead bilaterally." (AR a 56 (italics added).) In response to the first hypothetical, the VE opined that Plaintiff could still do the electronics assembler job, either "per the DOT or as performed," and the home health aide job, "as performed by the claimant." (*Id.*)

In a second hypothetical, the ALJ added to the assumptions in hypothetical number one the further condition "that because of pain this person would be off task 20 percent of the day." The VE opined that if Plaintiff had to be "off task 20 percent of the day," Plaintiff could not do either the electronics assembly or home health aide jobs. (*Id.*) In a third hypothetical, the ALJ asked the VE to assume that Plaintiff had to miss three or more days per month due to pain, to which the VE opined that under

7

such conditions "she could not sustain any type of employment." (AR 56-57.) The ALJ did not ask the VE any questions about whether his opinions were consistent with the DOT description of Plaintiff's PRW, or whether he had any explanation if there was such a deviation. (*See* AR 56 *et seq.*)

2. **The ALJ's Decision**

On June 21, 2013, the ALJ issued an opinion denying Plaintiff's application at step four of the five-step sequential evaluation. (*See* AR 24-32.) The ALJ found that Plaintiff suffered from severe impairments of a fractured right ankle and bone graft surgery following her car accident in 2000, and he also noted a severe neck condition. (*See* AR 26, 29.) The ALJ also noted conditions with hepatitis C, a left foot bunion problem, lumbosacral spine issues, alleged hip pain, and hand and grips strength problems, but he found these conditions "non-severe." (AR 26-27.) He also noted "no current pathology and arthritis of the cervical spine." (AR 26.)

In particular, the ALJ took issue with notes from a treating physician, Dr. K.N. Hurria, which indicated that Plaintiff had a "right hemiparesis cervical sprain, radiculopathy to both shoulders, lumbar sprain, [and] radiculopathy to the lower extremities" and the ALJ gave greater weight to the opinion from Dr. Morse, the non-examining medical expert who testified at the hearing, which found that there was "little if any evidence in [the] file establishing that the claimant has right hemiparesis or even received testing or treatment for this condition." (AR 28.) The ALJ also noted "various inconsistencies" in the file which he said detracted from Plaintiff's credibility. (AR 30.) Consequently, the ALJ credited the opinion from Dr. Morse and the ALJ also credited an opinion from Dr. Concepcion A. Enriquez, a consultative examiner, who opined that Plaintiff was able to perform a restricted range of light work. (*See* AR 30-31.)

The ALJ acknowledged that the VE found that Plaintiff could perform two past relevant jobs, that of "electronics assembler" and also as a "home health care" worker. (*See* AR 31-32.) However, in light of Plaintiff's RFC, the ALJ only found that Plaintiff could perform her past relevant work as an "electronics assembler," described in the Dictionary of Occupational Titles ("DOT") at no. 726.684-034, and as sedentary, semi-skilled work with a "Specific Vocational Preparation" of "3" when performed at a sedentary level. Further, the ALJ's decision only determined that Plaintiff could perform that job as it was "generally performed" in the national economy. (AR 31-32.) He made no finding about whether Plaintiff could perform that job as she had "actually performed" it in the past. (*Id.*)

3.   **Plaintiff's RFC Conflicts With the DOT Job Description for Her PRW**

At step four of the five-step sequential evaluation, the ALJ determines whether a claimant has the RFC to perform her PRW. *See* 20 C.F.R. § 404.1520(f). The term "past relevant work" means either (1) a specific past job as the claimant "actually performed" it, or (2) a past relevant job as it is "generally performed" or "usually performed" in the national economy. *See, e.g., Pinto v. Massanari,* 249 F.3d 840, 844-45 (9th Cir. 2001) (citing Social Security Ruling 82-62 and 20 C.F.R. §§ 404.1571, 404.1574, 404.1565, 416.971, and 416.974). The ALJ is not required to make explicit findings at step four on both prongs – that is, an ALJ may deny a claimant at step four based on a determination that she can do her PRW as she "actually performed" it or as that job is "generally performed." *See Pinto, id.* However, a vocational expert's finding that a claimant can do her PRW must comply with the regulations and rulings cited above. *See id.* (citing *Villa v. Heckler,* 797 F.2d 794, 798 (1986)).

9

1    Where a claimant cannot perform her PRW as she "actually performed" it, "but
2  can perform the functional demands and job duties as generally required by employers
3  throughout the economy, the claimant should be found 'not disabled.'"   Social
4  Security Ruling ("SSR") 82-61.   A plaintiff has the burden at step four to show that
5  she cannot perform past relevant work, either as she actually performed it, or as that
6  particular work is generally performed in the national economy.  *See id.*  However, an
7  ALJ always has a duty to make the requisite sufficient factual findings to support his
8  conclusion when denying a claimant at step four.  *Carmickle v. Comm'r of Soc. Sec.,*
9  533 F.3d 1155, 1167 (9th Cir. 2007) (citing *Pinto,* 249 F.3d at 847).

11    The DOT is the Commissioner's primary source of reliable vocational information,
12  and is usually the best source for how a job is "generally performed" in the national
13  economy.  *See Pinto,* 249 F.3d 845-46; *Johnson v. Shalala,* 60 F.3d 1428, 1434-35 and n.6
14  (9th Cir. 1995).  "The DOT creates a rebuttable presumption as to the job classification. To
15  deviate from the DOT classification, an ALJ 'may rely on expert testimony which
16  contradicts the DOT, but only insofar as the record contains persuasive evidence to support
17  the deviation.'"  *Tommasetti v. Astrue,* 533 F.3d 1035, 1042 (9th Cir. 2008) (quoting
18  *Johnson v. Shalala,* 60 F.3d at 1435).  The Social Security Rulings caution, however, that
19  "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic
20  occupational classification of the work is likely to be fallacious and unsupportable."  SSR
21  82-61.

23    The DOT describes job no. 726.684-034 as "assembler, semiconductor"; and the DOT
24  description of the "strength" requirement of the job states:

26    STRENGTH: Sedentary Work - Exerting up to 10 pounds of force
27    occasionally (Occasionally: activity or condition exists up to 1/3 of the
28    time) and/or a negligible amount of force frequently (Frequently: activity or

10

condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DOT no. 726.684-034.  The DOT description also states that the job requires "frequent" reaching "from 1/3 to 2/3 of the time," and also requires "frequent" handling and fingering; and the job requires "manual dexterity" at "level 3," which is the "middle 1/3 of the population."  *Id.*  The DOT and the Commissioner define "frequent," as used in the definition of "light work," as "occurring from one-third to two-thirds of the time"; and "occasionally," which appears in the definition of sedentary work, means "from very little up to one-third of the time."  *See* SSR 83-10.  "Reaching" is described as "extending the hands and arms in any direction"; and "handling" is "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands.  SSR 85-15.

Social Security regulations emphasize that "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit."  SSR 82-62.  *See also Garnica v. Astrue,* 238 F. App'x 254, 255 (9th Cir. 2007) (stating that SSR 00-4p states that ALJ has affirmative responsibility to ask about conflicts between DOT and VE testimony; ALJ must obtain reasonable explanation regarding conflict; and ALJ must identify conflict in decision and explain how it was resolved).

An ALJ's failure to inquire into a conflict between the VE's opinion and the DOT job description, and a failure to address and explain such a conflict in the decision, constitutes

11

procedural error.  *See Massachi v. Astrue,* 486 F.3d 1149, 1153-54 and n.19 (9th Cir. 2007) (in light of SSR 00-4p's requirements, an ALJ may not rely on the testimony of a VE regarding the requirements of a particular job without first inquiring whether the VE's testimony conflicts with the DOT).  Indeed, in *Massachi* the Ninth Circuit cited SSR 00-4p's "unambiguous requirement" that :

> 'when a [VE] . . .provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [VE] . . . evidence and information provided in the [Dictionary of Occupational Titles].'SSR 00-4p further provides that the adjudicator '*will* ask' the vocational expert 'if the evidence he or she has provided' is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

*Id.* at 1152-53 (emphasis in original).  Where, as here, the ALJ did not ask the VE whether his testimony conflicted with the DOT, and, if so, whether there was a reasonable explanation for the conflict, a reviewing court may not be able to determine if substantial evidence supports the ALJ's disability finding.  *Id.*  A reviewing court may find the procedural error to be harmless, however, if the VE provided sufficient support for his conclusion so as to justify any potential conflicts.  *Massachi, id.* at 1154 and n.19. Here, the VE did not provide any support or explanation for the conflict and the ALJ, contrary to agency regulations, never inquired.

4.     **The ALJ Erred in Failing to Inquire of the VE about the Conflict Between the DOT Requirements and Plaintiff's RFC Limitations**

The ALJ determined that Plaintiff could perform her PRW as an electronics assembler "as generally performed" and the ALJ stated that "[a]s the vocational expert testimony is

consistent with the DOT, the undersigned accepts it in accordance with SSR 00-4p []."  (AR at 32.)  However, there is a clear conflict between the RFC's limitation to "occasional overhead reaching" and the DOT's description that the electronics worker job requires "frequent reaching."

Indeed, the hypothetical that the ALJ presented to the VE is inconsistent with  the DOT "electronics worker" job description that the VE relied upon in opining that Plaintiff could do her PRW as "generally performed."    The ALJ presented a hypothetical for "*occasionally* reach[ing] overhead bilaterally" and "*occasionally* pushing and pulling" but the DOT job description posits "*frequent*" reaching. (AR 56).   The DOT description is apparently silent on how much "pushing and pulling" would be necessary for restricted light work.  (*See* DOT no. 726.684-034.)  But there is no dispute that the ALJ did not ask the VE at the hearing about the conflict and the ALJ himself did not recognize the conflict when he stated in his opinion that "the vocational expert['s] testimony is consistent with the DOT [.]."  (AR 32.)  This is a clear error under the Ninth Circuit's holding in *Massachi*, the relevant regulations and rulings.  *See, e.g., Massachi,* 486 F.3d at 1153-54 and n.19.

Without further clarification from the VE, the ALJ's opinion that Plaintiff could do her PRW as "generally performed" directly conflicts with the limitations in the RFC and is not supported by substantial evidence.  Although the VE opined that Plaintiff could do her PRW as an electronics assembler as she "actually performed" it, the ALJ did not rely on that opinion, and did not develop the record or discuss in his opinion how Plaintiff would have satisfied the demands of her PRW as an electronics assembler as she "actually performed" it.  This Court may not affirm the ALJ on a ground on which he did not rely.  *See Orn,* 495 F.3d at 630.

Although an ALJ's failure to inquire of a VE regarding a conflict between his or her testimony and the DOT may be harmless error, here, that is not the case.   The RFC's

13

restriction of "occasional overhead reaching" as compared to the DOT's description calling for "frequent reaching," may preclude Plaintiff from doing the PRW entirely.  Because the Court cannot "reasonably discern" how these issues would be resolved without further clarification from the ALJ, and possibly from a VE, the Court finds that under the circumstances of this case, the ALJ's failure to inquire of the VE regarding the conflict was not harmless error.  *Cf. Brown-Hunter v. Colvin,* 798 F.3d at 754;  *see, e.g., Tommasetti,* 533 F.3d at 1042 (where VE's testimony about past relevant work was "brief, indefinite, and sparse" and conflicted with DOT, step four denial was erroneous).

Accordingly, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the ALJ properly resolved the conflict, remand is appropriate for further development of the record in accordance with the foregoing.  *Benecke v. Barnhart,* 379 F.3d 587, 593-96 (9th Cir. 2004); *see also McLaughlin v. Colvin,* No. CV 14-9908 PLA, 2015 WL 5567755, at *4-5 (C.D. Cal. Sept. 22, 2015) (noting that there is no controlling Ninth Circuit law regarding whether an apparent conflict arises when the DOT is silent regarding a physical requirement of a job; and remanding for further proceedings beginning at step four where ALJ failed to seek clarification from VE).

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings in accordance with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATE:   December 11, 2015

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE